UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZACHARIAH VITALE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SONG, SCOTT LOSSMAN, MATT VALLEY, JANET MITCHELL, and CORIZON MEDICAL SERVICES,<br><br>　　　　Defendants. | Case No. 1:13-cv-00326-BLW<br><br>MEMORANDUM DECISION AND ORDER |

# INTRODUCTION

The Court has before it a Motion for Summary Judgment filed by the Defendants (Dkt. 37). Having reviewed the record in this case and having considered the arguments of the parties, the Court finds that oral argument is not needed. For the reasons below, the Court will grant the Motion.

## FACTUAL BACKGROUND

Plaintiff Zachariah Vitale was a prisoner in the custody of Idaho Department of Corrections ("IDOC") at the Idaho State Correctional Institution ("ISCI"). Vitale Aff. ¶ 2 (Dkt. 3-1). Vitale was transferred to the ISCI on April 22, 2010. Valley Aff. ¶ 4 (Dkt. 37-7). Upon intake, Vitale reported that he suffers from back pain and seizures, although he had not had a seizure in eight years without treatment. *Id*. Vitale's back pain caused him to seek medical treatment numerous times between July 2010 and July 2012. Statement of Undisputed Facts (Dkt. 37-1). Vitale was treated on each occasion that he sought medical treatment. *Id*. Over the course of two years, Vitale was prescribed a number of muscle relaxants and pain medications to treat the back pain. *Id*. Vitale was also provided physical therapy, stretching regimens, x-rays, ice memos, and a chair to assist in stretching and getting down from the top bunk bed. *Id*.

On March 17, 2012, emergency responders were called to Vitale's unit. *Id*. ¶ 19. According to Defendants, Vitale reported that he lost his balance while getting off of his top bunk and hit his head on the dresser. *Id*. Defendants note that he had a laceration above his right eyebrow that was treated on site with three bandage strips. *Id*. Vitale claims that the fall was caused by sciatic nerve pain and blurred vision. Am. Compl. ¶ 17 (Dkt. 9). Vitale submitted an HSR on March 19, 2012 alleging head trauma after his fall. Statement of Undisputed Facts ¶ 20 (Dkt. 37-1). Vitale was sent to a hospital for a head CT and a follow-up MRI two weeks later. *Id*. Neither test showed any recent head trauma. *Id*.

Generally, Vitale claims that Corizon and its medical staff did not assist Vitale in securing a bottom bunk memo and a medical mattress or "any other form of relief for his constant pain and suffering." Am. Compl. ¶ 10. Vitale alleges that Defendants Song, Valley, Lossman, and Mitchell were informed of Vitale's back pain and that the Defendants "did nothing." *Id*. ¶ 13. Vitale also claims that Corizon should have allowed Vitale to enroll in a "Chronic Care Program." *Id*. ¶ 21. Vitale brings all claims under the Eighth Amendment and the Fourteenth Amendment. *See generally* Complaint (Dkt. 3).

According to Defendants, bottom bunk memorandums are issued in specific cases including where an offender is reliant on crutches, has hands or feet amputated, or suffered a bone fracture. Song Aff. ¶ 10 (Dkt. 37-5). Defendants also consider whether an offender is 70 years or older, an offender's weight, and whether an offender has had any joint replacements. *Id*. Defendants submitted extensive notes and records documenting their treatment of Vitale for the years in question. Valley Aff., Ex. A (Dkt. 37-8).

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural

shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).  In addition, the Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

Section 1983 allows a plaintiff to bring a claim under the Eighth Amendment for unconstitutional prison medical treatment. To prevail on an Eighth Amendment claim

regarding prison medical care, a plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*.

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; … [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. See *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989). Mere indifference, medical malpractice, or negligence will not support a cause of action under

the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir.1980).  A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir.2004).

A claim under the Fourteenth Amendment's Due Process Clause for wrongful medical treatment is analyzed under the same standard as the Eighth Amendment's deliberate indifference standard.  *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010).  For this reason, the Court will assess all of the Plaintiff's Fourteenth and Eighth Amendment claims together.

## ANALYSIS

### PA JANET MITCHELL

Mitchell is a physician's assistant for Corizon working at ISCI.  Mitchell Aff. ¶ 1 (Dkt. 37-6).  Vitale alleges that Mitchell should have issued Vitale a bottom bunk memorandum and that Vitale's fall in March 2012 was a result of Mitchell failing to issue the memorandum.  Am. Compl. 9.  Vitale also claims that Mitchell ignored his need for a medical mattress.  *Id*.

According to Medical Defendants and supported by the facts in the record, Mitchell first assessed Vitale on May 16, 2011 for lower back pain. Mitchell Aff. ¶ 4. Mitchell determined that Vitale was in "no acute distress" but was experiencing tenderness in the sacroiliac joint. *Id*. She continued orders for pain medications (Naproxen and Neurontin) and muscle relaxants (Parafon Forte) and prescribed Vitale an analgesic balm. *Id*.

Mitchell treated Vitale on June 2, 2011 for back pain. *Id*. ¶ 5. After evaluating Vitale, she continued orders for current medication and provided Vitale with a Medrol Dose Pak. *Id*.

Mitchell treated Vitale on June 20, 2011 as a follow up to the June 2 appointment. *Id*. ¶ 6. According to Defendants, Mitchell observed that Vitale's condition had not changed. *Id*. She noted that physical therapy might prove helpful and requested a follow-up with Lossmann to discuss physical therapy. *Id*. The follow-up was performed on July 6, 2011. *Id*. Vitale requested a bottom bunk memorandum, but Mitchell determined that Vitale did not meet the criteria. *Id*.

Vitale submitted an HSR on October 4, 2011 and was seen that same day by Mitchell. *Id*. ¶ 7. Mitchell prescribed Claritin, saline nasal spray, Excedrin, and an x-ray of the cervical spine. *Id*. The x-ray revealed a "suspect paraspinal muscle spasm and early disc space narrowing anteriorly at C-4-5." *Id*. On October 17, 2011, Mitchell treated Vitale for his back pain. *Id*. ¶ 8. She concluded that Vitale did not seem to be in any distress and that he was able to sit comfortably. *Id*. Mitchell noted that Vitale did

not have any spinal tenderness and was able to walk normally without "foot drop." *Id*. Vitale again requested a bottom bunk memorandum, but Mitchell determined that he did not qualify. *Id*. As an alternative, Mitchell provided Vitale instruction on how to properly dismount from the top bunk bed. *Id*. She prescribed pain medication (Naproxen), a muscle relaxant (Parafon Forte), and requested an x-ray of the lumbar spine and pelvis. *Id*. The x-ray revealed normal alignment. Mitchell noted subtle changes at "the interior sacroiliac joints bilaterally." *Id*.

Mitchell ordered physical therapy on November 14, 2011. *Id*. ¶ 9. The physical therapy began on November 28, 2011 and continued into 2012. *Id*. According to Defendants, Vitale was missing the "pill call" for his prescriptions, so Parafon Forte was discontinued on November 16, 2011. Valley Aff. ¶5 (Dkt. 37-7).

Mitchell assessed Vitale on December 9, 2011 for back pain. Mitchell Aff. ¶ 9. Vitale reported that he had jumped off of his top bunk and experienced pain as a result. *Id*. According to Defendants, Vitale was moving easily and had full range of motion during the appointment. *Id*. Mitchell noted that Vitale experienced tenderness in the right and left lumbar region. *Id*. Mitchell diagnosed Vitale with a lumbar strain. *Id*. She prescribed muscle relaxants and pain medications, advised Vitale to continue the stretching he was taught in physical therapy, provided Vitale a chair to assist in dismounting from the top bunk, and ordered a follow-up in three to four weeks. *Id*.

This follow-up occurred on January 9, 2012. *Id*. ¶ 10. Vitale reported to be working at the wood shop, working out regularly, and running. *Id*. Based on her

assessment, Mitchell determined that Vitale's back pain was musculoskeletal and not neurological. *Id*. Mitchell determined that Vitale's condition was not negatively impacting his daily life because he was active. *Id*. She denied Vitale's request for a bottom bunk. *Id*.

Vitale has failed to show that during the course of his treatment by Mitchell that she exhibited deliberate indifference. Under the standard articulated in *Toguchi v. Chung*, it cannot be said based on the record that Mitchell had "subjective knowledge and conscious disregard of a substantial risk of serious injury" because Mitchell was "consistently responsive to [Vitale's] medical needs." *Togunchi*, 391 F.3d at 1061. Mitchell treated Vitale on numerous occasions over the two years in question. Every visit ended with a specific course of treatment for Vitale's back pain. Mitchell also attempted various courses of treatment for Vitale's pain, including different medications, physical therapy, and a chair to assist with dismounting from the top bunk. When necessary, Mitchell sought to support her findings with an x-ray of Vitale's spine to ensure that her diagnosis was correct. Based on Vitale's own daily life in prison, Mitchell concluded that Vitale's back pain was not serious enough to require a bottom bunk. All of these conclusions appear to be well founded, and there is no indication in the record that Mitchell chose her course of treatment in conscious disregard of a serious risk of harm to Vitale. The treatment of Vitale was not "so inadequate that it demonstrated an absence of professional judgment, that is, that so minimally competent professional would have so responded under those circumstances." *Collignon v.*

*Milwaukee County*, 163 F.3d. 982, 989 (7th Cir. 1998).  Vitale's claims against Mitchell amount to a disagreement in course of treatment, which is not actionable under the Eighth Amendment.  As such, Mitchell is entitled to summary judgment on the claims against her.

**MATT VALLEY, P.A.**

Valley is a physician's assistant for Corizon working at the ISCI.  Valley Aff. ¶ 1 (Dkt. 37-7).  Vitale claims that Valley "failed to protect the Plaintiff from harm" when Valley was aware of the "substantial risk of harm" of Vitale being assigned a top bunk.  Am. Compl. 6.  Vitale alleges that Valley should have prescribed Vitale a medical mattress.  *Id*.  Vitale also claims that Valley refused to prescribe pain medication or assist him at all in managing his pain.  *Id*.

According to the Defendants and undisputed by Vitale, Valley treated Vitale on a number of occasions.  *See* Valley Aff.  On April 27, 2010, Valley processed Vitale's intake orders and prescribed Vitale Ibuprophen and a muscle relaxant (Robaxin).  *Id*. ¶ 4.  On July 14, 2010, Vitale was treated by Valley after submitting a Health Service Request ("HSR") for back pain.  *Id*. ¶ 5.  Valley examined Vitale and determined that Vitale was not in "apparent distress" because Vitale had full range of motion, no swelling, and positive straight leg raising.  *Id*.  Valley prescribed Vitale another muscle relaxant (Parafon Forte), pain medication (Mobic), a thirty-day ice memo, and a lumbar series x-ray.  *Id*.  The x-ray revealed no abnormalities.  *Id*.

On October 6, 2010, Valley again treated Vitale for back pain. *Id.* ¶ 6. According to Defendants, Vitale reported to Valley that he was running and exercising. *Id.* Valley informed Vitale that he could access Tylenol from the commissary and implemented a stretching plan. *Id.* That same day another P.A, Seth Youksetter, reviewed Vitale's new strength training exercises with him and ordered a follow-up appointment in one month for "trigger point injections in the lower back." *Id.* In November 2010, orders for Naprozen and Parafon Forte were made for Vitale. *Id.*

Vitale had two physical therapy assessments in January and February of 2012. *Id.* ¶ 6. The physical therapists reported that Vitale was responding well to the home exercise program and that his flexibility had improved. *Id.* On February 12, 2012, Vitale reported to the physical therapists that he was working out and playing basketball. *Id.* The physical therapist determined that the goals of physical therapy had been met and that physical therapy need not be continued. *Id.* Even so, Valley treated Vitale on February 29, 2012. *Id.* Vitale reported that he experienced a back spasm. *Id.* Valley assessed the physical therapist's comments and determined that the pain could be controlled with continued therapy and pain medications. *Id.* Valley prescribed Neurontin. *Id.* According to Defendants, Vitale failed to pick up his Neurontin prescription from pill call. *Id.* Valley scheduled an appointment with Vitale to discuss the "non-adherence." *Id.*

Valley treated Vitale in relation to his head injury after falling off of the top bunk. *Id.* ¶ 8. Valley prescribed Toradol for the head pain. *Id.* However, Lossman disagreed

with the Toradol order, and instead recommended Vicodin or Ultram.  *Id*.  According to the Medical Defendants, Toradol could injury Vitale's kidneys if repeated doses are taken, and Lossman and Valley agreed that Ultram was the proper course of treatment.  *Id*.  Valley ordered Ultram on April 25, 2012.  *Id*.

Valley treated Vitale for his back pain on July 26, 2012.  *Id*. ¶ 9.  According to Valley, Vitale was in no distress, had no back tenderness, and had no limb weakness or back spasms.  *Id*.  Valley recommended physical therapy, which began again in August 2012.  *Id*.

The facts from the record demonstrate that Vitale has failed to show that Valley's treatment constituted deliberate indifference.  Valley was responsive in treating Vitale's symptoms and did not refuse to prescribe pain medications as Vitale alleged.  Valley made an informed medical decision not to issue Vitale a bottom bunk memorandum or a medical mattress, and instead prescribed him medication for the pain and ordered physical therapy.  Vitale's allegations are merely a difference in opinion as to how he should have been medically treated, which is not enough to sustain a claim as a matter of law under the Eighth Amendment.  As the Ninth Circuit held in *Sanchez v. Vild*, Vitale alleging that he should have been issued a bottom bunk memorandum and a medical mattress is not enough to withstand summary judgment because differences in judgment between an inmate and prison medical personnel regarding appropriate treatment are not enough to establish a deliberate indifference claim.  *See Sanchez,* 891 F.2d at 242.

Because Vitale has not shown that Valley was deliberately indifferent, Valley is entitled to summary judgment.

## MYUNG SONG, D.O.

Song worked as an independent contractor physician for Corizon at the ISCI. Song Aff. ¶ 4 (Dkt. 37-5).  Vitale claims that Song should have issued Vitale a bottom bunk memorandum because Song was aware of the alleged risk posed to Vitale on the top bunk.  Am. Compl. 7.  Vitale also claims that Song should have prescribed a medical mattress and failure to do so caused Vitale pain.  *Id*.  Finally, Vitale claims that Song "refused" to prescribe Vitale "proper pain management medication."  *Id*.

Song first treated Vitale on November 24, 2010 in the outpatient clinic.  Song Aff. ¶ 8.  According to Defendants, Vitale reported that he was experiencing muscle spasms at night.  *Id*.  Song determined that Vitale was not in any acute distress.  *Id*.  Song reviewed Vitale's stretching exercise with him and ordered a non-steroidal anti-inflammatory pain medication (Naproxen) and a muscle relaxant (Parafon Forte).  *Id*.

Song was consulted on January 11, 2012 after Vitale made another request for a bottom bunk memorandum.  *Id*. ¶ 10.  Song determined that because Vitale was young, physical active, had a low body-mass index, and did not have any red flags on his x-rays that Vitale did not qualify for a bottom bunk.  *Id*.

Again, Vitale has failed to show that Song acted with deliberate indifference. There has been no showing that Song acted with conscious disregard of a substantial risk of serious injury.  Song's determination that Vitale did not qualify for a bottom bunk

memorandum was well sounded given Corizon's bottom bunk criteria and Vitale's physical condition. As such, Song is entitled to summary judgment.

## SCOTT LOSSMAN, M.D.

Dr. Lossman served as the Idaho Regional Director for Corizon from March 8, 2010 through September 30, 2012. Lossman Aff. ¶ 4 (Dkt. 37-4). In his role as Regional Director, Dr. Lossman was responsible for overseeing the medical care of inmates at the Idaho State Correctional Institute. *Id*. Dr. Lossman did not provide medical treatment to inmates and performed only administrative duties in his capacity as Regional Director. *Id*. Dr. Lossman acted as an independent contractor for Corizon at ISCO when he treated inmates and Vitale. *Id*.

Vitale alleges that Dr. Lossman failed to prescribe him a medical mattress and a bottom bunk memorandum. Am. Compl. 5. Vitale also claims that Lossman did not prescribe Vitale any medication for his back pain. *Id*. at 6.

According to the Medical Defendants, Dr. Lossman first treated Vitale on July 6, 2011. Lossman Aff. ¶ 9. Lossman determined that Vitale was experiencing sacroiliitis acute on chronic. *Id*. At the time of the appointment, Vitale was Neurontin, Parafon Forte, and Naprosyn. *Id*. According to Defendants, Vitale stated that the Naprosyn and Neurotin were not working for him, so Lossman discontinued these two medications. *Id*. Lossman noted that Vitale did not meet the criteria for a bottom bunk. *Id*. Lossman ordered Vitale physical therapy and Tylenol. *Id*. Vitale received the physical therapy one month later and was taught an in-home exercise program. *Id*.

Lossman was consulted on or around March 19, 2012 after Vitale fell off of his top bunk bed. Valley Aff. ¶ 8. After the fall, Ben Bish, a nurse practitioner, assessed Vitale and ordered a head CT. *Id*. Bish conferred with Lossman on whether to do a follow up MRI in two weeks. *Id*. An MRI was ordered and performed on May 4, 2012. The MRI revealed no new head trauma. *Id*.

It cannot be said based on the record that Lossman acted with deliberate indifference in conscious disregard of a substantial risk of serious injury. Like the other Defendants, Lossman was responsive to Vitale's medical need and tried a variety of treatments to address his pain, and Vitale has not submitted facts to contradict this conclusion. Lossman failing to issue Vitale a bottom bunk memorandum or a medical mattress does not amount to a claim under the Eight Amendment for deliberate indifference. Rather, it is a disagreement regarding course of treatment, which, as discussed above, is not enough to establish a deliberate indifference claim. Accordingly, Lossman is entitled to summary judgment on the claims against him.

### CORIZON MEDICAL SERVICES

During the relevant times of Plaintiff's allegations, the Idaho Department of Corrections contracted with Corizon, a private corporation, to provide medical services for a number of IDOC facilities. Lossman Aff. ¶ 5. According to Defendants and undisputed by Plaintiff, all physicians treating and diagnosing inmates were independent contractors. *Id*.

Vitale alleges that Corizon has a policy to put inmates on "psychotropic medication" in lieu of pain medication and that Corizon changed an internal policy that does not allow for inmates to be classified as "chronic care" inmates, which allegedly has caused Vitale to be in pain. Am. Compl. 8-9. However, Vitale did not provide any information supporting this claim, nor did he seek any information relating to this "chronic care" program in his discovery requests. (Dkt. 51). Vitale claims that the medical care provided by Corizon is unconstitutional. *Id*.

In order for Vitale to make a claim against Corizon as an entity, Vitale must meet the standard outlined in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-94 (1978). The elements under the *Monell* test for a § 1983 claim against an entity are: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Based on the above discussion, it is clear that Corizon did not deprive Vitale of a constitutional right. Nor has Vitale shown that there is a specific policy or custom within Corizon that deprived him of a constitutional right beside the basic facts alleged in the Amended Complaint. Nothing from the record supports Vitale's conclusion, and Vitale did not provide the Court any further information regarding these claims. Vitale has not alleged which constitutional right he was deprived of or provided the Court any specific

information on how a Corizon policy amounted to deliberate indifference. Therefore, Corizon is entitled to summary judgment on the claims against it.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 37) is **GRANTED.**

2. Plaintiff's Motion for Extension of Time (Dkt. 40) is **DEEMED MOOT**.

3. Plaintiff's Motion for Appointment of Counsel (Dkt. 41) is **DENIED**.

4. Plaintiff's Motion for An Order Deferring Time to Respond to Summary Judgment (Dkt. 45) is **GRANTED in part**. The Court has considered both of Plaintiff's responses to Defendants' motion for summary judgment.

5. Plaintiff's Motion for Appointment of Counsel (Dkt. 47) is **DENIED**.

6. The Court will file a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: September 21, 2016

B. Lynn Winmill
Chief Judge
United States District Court